**Opinion filed August 13, 2009**



**In The**

# Eleventh Court of Appeals

_____

### No. 11-08-00140-CR

_____

### JEFFERY EUGENE KEITH, Appellant

### V.

### STATE OF TEXAS, Appellee

**On Appeal from the 385th District Court**

**Midland County, Texas**

**Trial Court Cause No. CR31910**

### O P I N I O N

The jury convicted Jeffery Eugene Keith of murder and arson, and it assessed his punishment at confinement for life for each offense. We affirm.

### I. *Background Facts*

Keith was indicted for murdering his mother, Carolyn Keith, and then attempting to cover up the murder by setting fire to her house. Keith does not challenge the sufficiency of the evidence to support these convictions and, therefore, the facts of the crimes will not be summarized. Instead, Keith complains of two procedural rulings.

Keith's counsel filed a motion to have him examined by an expert witness to determine his competency to stand trial. The trial court appointed a medical doctor to evaluate Keith. Following a competency hearing, the trial court found that Keith was incompetent to stand trial and committed him to a mental health facility. Keith stayed in the facility for approximately one and one-half years. Personnel in the facility informed the trial court that Keith was now competent to stand trial, and the trial court entered an order restoring his competency.

Prior to trial, Keith objected to being publicly shackled during trial, and the trial court conducted an evidentiary hearing. The trial court overruled Keith's objection, and he was visibly restrained during trial with handcuffs, a belly chain, and leg shackles. At trial, Keith objected to the State's exercise of peremptory challenges on four African-American veniremembers. The trial court denied Keith's motion, and the trial proceeded. The jury found Keith guilty of murder and arson, found that two enhancement paragraphs were true, and assessed his punishment at confinement for life for each offense.

## II. *Issues*

Keith challenges his conviction with two issues, contending that he was deprived of a fair trial because of the use of visible restraints and that the State improperly struck two African-American veniremembers.

## III. *Visible Restraints*

Keith argues that the trial court erred by denying his objection to the use of visible restraints because the presumption of innocence was unduly compromised. The decision to use physical restraints must be made by the trial court on a case-by-case basis, and the use of such restraints will necessitate reversal only where the decision constitutes an abuse of discretion and results in harm. *Cooks v. State*, 844 S.W.2d 697, 722 (Tex. Crim. App. 1992). The test for abuse of discretion is whether the trial court's decision was outside the zone of reasonable disagreement. *Landers v. State*, 256 S.W.3d 295, 303 (Tex. Crim. App. 2008); *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005).

Physically restraining or shackling a defendant in front of the jury infringes upon the constitutional presumption of innocence. *Deck v. Missouri*, 544 U.S. 622, 630-31 (2005). To avoid compromising this right, a trial court may only shackle a defendant in exceptional circumstances,

2

and it must clearly and affirmatively detail those circumstances. *Long v. State*, 823 S.W.2d 259, 282 (Tex. Crim. App. 1991). Examples of exceptional circumstances warranting shackling include situations in which the accused has a history of escape, expressed an intent to escape, threatened physical violence, assaulted persons in the courtroom, and repeatedly interrupted court proceedings. *Gammage v. State*, 630 S.W.2d 309, 313-14 (Tex. App.—San Antonio 1982, pet. ref'd). Trial courts must proceed with great caution whenever the exceptional circumstances are based on conduct occurring outside the courtroom. *Id.* at 315.

The trial court made several findings in support of its ruling. The court found that Keith had previously assaulted two deputy sheriffs, had kicked the windows out of a jail van, had been convicted of retaliation for threatening two peace officers, had been convicted of unlawfully carrying a weapon on licensed premises, had been convicted of aggravated assault, and had been involved in fights with other inmates over card games while incarcerated awaiting trial. The trial court also found that the other inmates were afraid to turn their back to Keith, that jail personnel had preempted further violence while awaiting trial by maintaining Keith in a high risk to super max classification and by bribing him to take his medication with extra food, that Keith was six-foot-six to six-foot-seven and weighed approximately 300 pounds, that it took multiple officers to subdue Keith when he became violent, and that pressure points were ineffective on him. The trial court expressed concern over the possibility of a violent outburst in light of Keith's unstable mental history and the upsetting photographic evidence of his murdered mother.

Keith does not challenge the factual sufficiency of any of these findings but asserts that they are insufficient to justify the use of physical restraints. Keith argues that physical restraints are appropriate only as a last resort and notes that much of the conduct upon which the trial court relied occurred years before trial. Keith observes, for example, that the assaults on the two deputy sheriffs and kicking the window out of a jail van occurred in the mid-90s, that the aggravated assault conviction occurred in 1999, and that the unlawfully carrying a weapon conviction occurred in 2002. Keith also argues that a higher standard is applicable when the questioned conduct occurs outside the courtroom and points out that there was no evidence of violent behavior in the courtroom. Finally, Keith suggests less drastic security measures, such as a stun belt, should have been considered.

The trial court did not abuse its discretion. While some of Keith's conduct occurred years before trial, it was part of a pattern of behavior that continued through his detention awaiting trial. The trial court also had considerable evidence of Keith's mental or emotional issues, knew that this could be an emotional trial, and knew the extraordinary measures the sheriff's office was using to keep Keith medicated and to prevent him from injuring others. There was no evidence that Midland County had a stun belt or other form of restraint sufficient to control Keith. The trial court did consider a leg brace, but the county did not have one that fit Keith. Finally, we note that the trial court took steps to limit the prejudicial effect of Keith's physical restraints. Keith was not required to stand, and he was given the choice to be seated before the jury panel entered the room to prevent calling attention to the restraints. Issue One is overruled.

IV. *Batson Challenge*

Keith objected to the State's use of four peremptory strikes on African-American veniremembers pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), and TEX. CODE CRIM. PROC. ANN. art. 35.261 (Vernon 2006). The State provided reasons for its strikes, including the fact that two listed their religious affiliation as Pentecostal. Keith objected, contending that "religious affiliation is [not] a good race neutral reason." The trial court denied Keith's *Batson* challenges. Keith contends on appeal that the trial court erred as to the two Pentecostal veniremembers because the State failed to offer a racially neutral reason.

When reviewing a *Batson* challenge, the record is examined in the light most favorable to the trial court's ruling. *See Keeton v. State*, 749 S.W.2d 861, 870 (Tex. Crim. App. 1988). The trial court's ruling will only be reversed when it is clearly erroneous. *See Esteves v. State*, 849 S.W.2d 822, 823 (Tex. Crim. App. 1993). A ruling is clearly erroneous when, after searching the record, we are left with the "definite and firm conviction that a mistake has been committed." *Hill v. State*, 827 S.W.2d 860, 865 (Tex. Crim. App. 1992).

In *Purkett v. Elem*, 514 U.S. 765 (1995), the Supreme Court delineated the three-step process for properly determining a *Batson* challenge. First, the opponent of a peremptory challenge must make out a prima facie case of racial discrimination, essentially a burden of production. In the second step, the burden of production shifts to the proponent of the strike to respond with a race-neutral explanation. Third, if a race-neutral explanation has been proffered, the trial court must

4

decide whether the opponent of the strike has proved purposeful racial discrimination. The burden of persuasion is on the opponent of the strike to convince the trial court that the strike was racially motivated. *Id.* at 767-68.

Keith's challenge focuses on the second step of this analysis. Keith does not contend that the State's reasons were pretextual, and the record indicates that the State struck all Pentecostal veniremembers, including one non-African-American. Nor is Keith trying to expand *Batson*'s scope in the traditional sense by arguing that religious affiliation should receive the same protection as racial identity. His argument is not predicated upon his own religious affiliation, and he makes no complaint of the strike exercised on the non-African-American Pentecostal veniremember. Instead, Keith's position is that religious affiliation is not a racially neutral reason and, therefore, that the State did not satisfy its burden of production with regard to the two African-American Pentecostal veniremembers.

The Texas Court of Criminal Appeals has held that the use of religious affiliation is a permissible basis to strike a veniremember. *Casarez v. State*, 913 S.W.2d 468 (Tex. Crim. App. 1995). Keith acknowledges this, but maintains that an emerging consensus exists for the proposition that exercising peremptory challenges based solely upon religious affiliation is unconstitutional.[1] Rather, Keith suggests, the State must rely upon a veniremember's religious *beliefs*, and he contends that *Casarez* supports this conclusion because the prosecutor in that case argued that he struck the Pentecostal veniremembers due to his experience with them having trouble passing judgment on others.

We do not have the prerogative to overturn or modify *Casarez*. Moreover, we do not believe that this case squarely presents the issue Keith advances because the State did not rely entirely upon the veniremembers' religious affiliation. One of the two was familiar with a potential defense witness, and the State indicated that it was concerned about her temperament. This individual listed herself as the person she admired most and the "devil, devil, devil" as the person she admired the least. The second was Keith's former coach. There is no claim that these are not racially neutral

---

[1]Keith cites decisions such as *Highler v. State*, 834 N.E.2d 182, 196 (Ind. Ct. App. 2005), *aff'd in part*, 854 N.E.2d 283 (Ind. 2006); *State v. Fuller*, 862 A.2d 1130 (N.J. 2004); *United States v. Brown*, 352 F.3d 654, 668 (2d Cir. 2003); *State v. Purcell*, 18 P.3d 113 (Ariz. Ct. App. 2001, review denied); *United States v. Stafford*, 136 F.3d 1109 (7th Cir. 1998); and *United States v. Somerstein*, 959 F. Supp. 592 (E.D. N.Y. 1997), in support of this contention.

reasons.  Because they would justify the use of a peremptory strike, even if the veniremembers' religious affiliation is not a racially neutral reason, no harm is shown.

Keith alternatively argues that the use of religious preference violates the equal rights and religious freedom provisions of the Texas Constitution.  TEX. CONST. art. I, §§ 3a, 4.  This issue was not raised below and, therefore, is not properly before us.  But even if it were, because the State had racially neutral reasons in addition to the veniremembers' religious affiliation, no harm is shown.  Issue Two is overruled.

V.  <em>Holding</em>

The judgment of the trial court is affirmed.

RICK STRANGE

JUSTICE

August 13, 2009

Publish.  <em>See</em> TEX. R. APP. P. 47.2(b).

Panel consists of:  Wright, C.J.,
McCall, J., and Strange, J.

6