**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-16-00348-CR**
_____

**RICARDO MONTELONGO JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 253rd District Court**
**Liberty County, Texas**
**Trial Cause No. CR31999**

**MEMORANDUM OPINION**

In two issues, Ricardo Montelongo Jr. appeals his conviction for assaulting a public servant. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(1) (West Supp. 2017).[1] Specifically, Montelongo argues that the evidence is insufficient to support his conviction because the State allegedly failed to rebut his assertion of self-defense.

---

[1] We cite to the current version of the Penal Code throughout this opinion because any amendments do not affect the issues on appeal.

Montelongo also complains that his due process was violated because he was required to wear chains in the presence of the jury during the punishment phase of his trial. Because the jury determined Montelongo was a habitual offender, his punishment was enhanced by previous felony convictions, and he was sentenced to seventy-one years in prison. *See* Tex. Penal Code Ann. § 12.42(d) (West Supp. 2017). We overrule both of his appellate issues and affirm the trial court's judgment.

## Background

Frank Longoria, then a corporal with the Liberty County Sheriff's Department, was in uniform and patrolling in his marked police car the night of June 13, 2015. He saw Montelongo's vehicle drift back-and-forth into the opposing lane of traffic. Deputy Longoria activated his in-car camera, turned on his emergency lights, and sounded his siren to alert Montelongo to pull over. Montelongo did not pull over for some time but eventually pulled into a business's parking lot and finally came to a stop in the back of the parking lot.

When Montelongo exited his car, he appeared disoriented, confused, and intoxicated. He asked Deputy Longoria why he had been stopped. Deputy Longoria instructed Montelongo to place his hands either above his head or behind him, but rather than comply, Montelongo requested to go to the bathroom. Deputy Longoria again instructed Montelongo to place his hands above his head and to specifically

2

not put them in his pockets or he would be tased, but Montelongo placed his right hand inside of his pants pocket. Deputy Longoria then demanded Montelongo take his hand out of his pocket for fear that he had a weapon of some sort, but when Montelongo was slow to obey, Deputy Longoria tased him. Deputy Longoria acknowledged that he reacted quickly when Montelongo was slow to pull his hand out of his pocket, and would not have tased him if he would have seen that Montelongo had nothing in his pocket. When the taser malfunctioned, Montelongo cursed Deputy Longoria and struck him in the face. Deputy Longoria's glasses were damaged, and he felt immediate pain and still had soreness the following day. Another officer assisted Deputy Longoria in placing Montelongo into custody after Deputy Longoria was unable to handcuff Montelongo alone. At trial, Montelongo did not testify, nor call any witnesses to testify on his behalf.

Montelongo requested a self-defense instruction against Deputy Longoria for his alleged use of greater force than was necessary for an arrest or search of Montelongo. *See* Tex. Penal Code Ann. § 9.31(c) (West 2011). The trial court included the instruction in the charge, but the jury found Montelongo guilty of the felony offense of assaulting a public servant. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(1). Montelongo elected to have the jury assess punishment. Before the punishment phase of the trial began, Montelongo's counsel complained to the

court that Montelongo was restrained with belly chains in front of the jury. Specifically, the following colloquy occurred:

> [DEFENSE]: Before we go any further, I'm lodging a complaint that my client is in belly chains in front of the jury.
>
> THE COURT: I understand. [Bailiff]? This morning what happened with the defendant?
>
> THE BAILIFF: He refused to get dressed out, but he came. He came. He's convicted of a felony as of yesterday; so, therefore, for security purposes, he's been placed in chains.
>
> THE COURT: The minimum is 25 to 99 or life.
>
> THE BAILIFF: Correct.
>
> THE COURT: Has he indicated or has he shown any propensity to — to possibly cause some problems.
>
> THE BAILIFF: Yes, sir. He poses a threat, yes, sir.
>
> THE COURT: All right. [Defense], I'm going to leave him in the chains, but he is in his street clothes.
>
> [DEFENSE]: All right.

The punishment phase of the trial continued without incident or reference to the chains. Following deliberations, the jury found the enhancements to be true, which made Montelongo an habitual offender. The jury then assessed a seventy-one year sentence.

4

<h1 style="text-align:center">Sufficiency of the Evidence</h1>

In Montelongo's first issue on appeal, he argues that the evidence is legally insufficient to support his conviction because the State failed to rebut his self-defense assertion beyond a reasonable doubt. Montelongo seems to contend that he established his self-defense theory as a matter of law, but "the issue of self-defense is an issue of fact to be determined by the jury." *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991).

Generally, once a defendant produces some evidence raising the issue of self-defense, the State bears the burden of persuasion to show beyond a reasonable doubt that the defendant's actions were not justified. *Id.*; *Valverde v. State*, 490 S.W.3d 526, 527–28 (Tex. App.—San Antonio 2016, pet ref'd). To meet its burden, the State is not required to produce additional evidence. *Saxton*, 804 S.W.2d at 913; *Valverde*, 490 S.W.3d at 528. If the jury finds the defendant guilty, it has made an implied finding against any defensive theory raised by the defendant. *Saxton*, 804 S.W.2d at 914; *Valverde*, 490 S.W.3d at 528 (citing *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003)).

As stated in *Valverde,*

> [w]hen a defendant challenges the legal sufficiency of the evidence to support the jury's implicit rejection of his self-defense claim, "we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing

all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt."

490 S.W.3d at 528 (quoting *Saxton*, 804 S.W.2d at 914). In conducting a legal sufficiency review, we defer to the jury's assessment of the credibility of the witnesses and the weight to be given to their testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *Valverde*, 490 S.W.3d at 528.

Montelongo does not challenge the sufficiency of the evidence to support the jury's finding of the essential elements of assault of a public servant beyond a reasonable doubt. Rather, Montelongo challenges the sufficiency of the evidence to support the jury's rejection of his self-defense claim. This is consistent with him requesting a self-defense instruction at trial since "a defensive instruction is only appropriate when the defendant's defensive evidence essentially admits to every element of the offense *including* the culpable mental state, but interposes [a] justification to excuse the otherwise criminal conduct." *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007). With regard to the essential elements of the offense, the jury was charged that Montelongo committed the offense of assaulting a public servant, if he knew that Deputy Longoria was a peace officer discharging his official duties when attempting to detain or arrest him and intentionally, knowingly, or recklessly caused Deputy Longoria bodily injury when he hit Deputy

6

Longoria in the head with his fist. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(1). In this case, the evidence is undisputed that Montelongo hit Deputy Longoria, a uniformed peace officer on duty, in the head with his fist causing bodily injury. Accordingly, consistent with Montelongo's request for the self-defense instruction, the evidence establishes every essential element of the offense of assault of a public servant beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914.

Next, we examine whether the jury "also would have found against [Montelongo] on the self-defense issue beyond a reasonable doubt." *See id.* In this case, Montelongo was justified in using force to resist his arrest or search if, before he resisted, Deputy Longoria used or attempted to use greater force than was necessary to make the arrest or search, and Montelongo reasonably believed that the force he used was immediately necessary to protect himself against Deputy Longoria's use or attempted use of the greater than necessary force. *See* Tex. Penal Code Ann. § 9.31(c). Deputy Longoria's testimony indicated that when Montelongo finally stopped his car and got out he seemed disoriented, confused, and intoxicated. Montelongo would not follow instructions when Deputy Longoria ordered him to place his hands on top of his head. Disregarding Deputy Longoria's instruction and warning that he would be tased if he continued to disobey, Montelongo placed his hand in his pocket. Deputy Longoria—afraid that Montelongo could have a

7

weapon—again demanded that Montelongo take his hand out of his pocket or be tased. After he failed to immediately comply with Deputy Longoria's command, Montelongo was tased. However, when only one probe embedded in Montelongo, the taser was ineffective. In response, Montelongo became agitated and attacked Deputy Longoria, striking him in the face and knocking him down. Deputy Longoria's testimony was consistent with the video-recording of the traffic stop admitted into evidence and played for the jury. Neither Montelongo, nor any other witness or evidence contradicted the account provided by Deputy Longoria or the video-recording.

Having reviewed all of the evidence in the light most favorable to the prosecution, we conclude the jury rationally could have found each element of the offense beyond a reasonable doubt and rationally could have found against Montelongo on the self-defense issue beyond a reasonable doubt. We overrule Montelongo's first issue.

## Restraint of Defendant in Open Court

Montelongo complains in his second issue that the trial court violated his rights to due process by allowing the State to restrain him in open court during the punishment phase of his trial.

Efforts must be made to ensure the jury does not view the defendant in shackles; otherwise, a defendant's presumption of innocence is seriously infringed. *Long v. State*, 823 S.W.2d 259, 282 (Tex. Crim. App. 1991).[2] Although the application of the presumption of innocence can be questionable during the punishment phase, the trial court must still maintain the defendant's due process right to a meaningful defense and conduct dignified proceedings. *See Deck v. Missouri*, 544 U.S. 622, 632 (2005). Thus, courts may not routinely require defendants to appear in shackles before a jury during either the guilt or punishment phase of trial, but exceptional circumstances may demand that a trial court shackle a defendant. *See id.* at 628–29; *Long*, 823 S.W.2d at 283. "Examples of exceptional circumstances warranting shackling include situations in which the accused has a history of escape, expressed an intent to escape, threatened physical violence, assaulted persons in the courtroom, and repeatedly interrupted court proceedings." *Keith v. State*, 294 S.W.3d 352, 355 (Tex. App.—Eastland 2009, no pet.). When a

---

[2] The Texas Court of Criminal Appeals discussed in *Bell v. State* that for an error allowing the jury to view a defendant's restraints to rise to the level of constitutional error, the record must reflect a reasonable probability that the jury was aware that the defendant had been placed in restraints. 415 S.W.3d 278, 283 (Tex. Crim. App. 2013). If the record fails to establish a "substantial basis supporting a conclusion that the jury perceived the defendant's restraints[,]" the error is to be evaluated under a non-constitutional error analysis. *Id.* at 283; *see also* Tex. R. App. P. 44.2(b).

trial court determines that it must shackle a defendant, it must make case-specific findings of fact justifying the use of shackles. *Deck*, 544 U.S. at 633. Further, the "record must clearly and affirmatively reflect the trial judge's reasons [for shackling the defendant]." *Long*, 823 S.W.2d at 282.

In this case, the bailiff placed the belly chains on Montelongo, and when he objected to being shackled in front of the jury, the trial court inquired as to why Montelongo was in chains. The bailiff stated that Montelongo refused to get dressed, posed a threat, and had been convicted of the crime for which he was charged. While the trial court identified case-specific special circumstances to justify the restraint of the defendant, the reasons provided for Montelongo's continued shackling are more akin to those provided in *Deck*, i.e., based on the conviction itself, rather than detailed reasons, like those explained in *Marquez v. State*. *Compare Deck*, 544 U.S. at 635 (holding that the trial court's justification of shackling Deck because he had been convicted was insufficient), *with Marquez v. State*, 725 S.W.2d 217, 228 (Tex. Crim. App. 1987), *cert. denied*, 484 U.S. 872 (1987), *overruled on other grounds by Moody v. State*, 827 S.W.2d 875, 892 (Tex. Crim. App. 1992) (findings that defendant had threatened escape and suicide, attacked a cameraman, and threatened a prosecutor fell within the special circumstances in which a trial court can shackle a defendant without abusing its discretion).

The State argues that because Montelongo had already been convicted of the offense, he was not deprived of his presumption of innocence. However, as discussed in an unpublished case, *Glasscock v. State*, No. 06-11-00239-CR, 2012 WL 2127514, *4 (Tex. App.—Texarkana June 13, 2012, pet. ref'd) (mem. op., not designated for publication), the Texarkana Court of Appeals held that handcuffs in addition to jail clothes could infringe on the defendant's presumption of innocence regarding extraneous offenses introduced during the punishment phase. In Montelongo's case, the State bore the burden of proving Montelongo committed two prior sequential felonies to enhance his status as an habitual offender, thereby, elevating his punishment range. Under these circumstances, Montelongo's presumption of innocence could potentially be impacted by the visible presence of a restraint. *See id.*

However, we need not reach that issue. Even if we assume error here, we would not reverse. Error depriving a defendant of the presumption of innocence does not require reversal where the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *See* Tex. R. App. P. 44.2(a); *Satterwhite v. Tex.*, 486 U.S. 249, 256 (1988) ("[I]f the prosecution can prove beyond a reasonable doubt that a constitutional error did not contribute to the verdict, the error is harmless and the verdict may stand."). The presence of overwhelming

11

evidence supporting the finding in question can be a factor in the evaluation of harmless error. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). And we must consider the "totality of the circumstances" by examining the record as a whole. *See Miles v. State*, 204 S.W.3d 822, 828 (Tex. Crim. App. 2006).

Based on the record before us, any alleged error was harmless beyond a reasonable doubt. The State provided pen packets of two of Montelongo's prior felonies and a fingerprint witness that testified that the fingerprints in the packets matched those that he took of Montelongo at trial. The State also called a regional coordinator with the Texas Department of Criminal Justice (TDCJ) that acts as a lieutenant in the Security Threat Group Department that monitors the activities of all security threat groups or prison gangs within TDCJ. The lieutenant testified that during Montelongo's prior imprisonment, he was confirmed as being affiliated with one of the groups that they monitor; and as a result, upon his incarceration for this offense would be sent to a segregated unit. While Montelongo cross-examined these witnesses, he did not offer any controverting evidence. Montelongo did not testify during the punishment, nor did he contend that the belly chains prevented him from testifying. He did not call any of his own witnesses either. Furthermore, the jury was well aware that Montelongo had just been on trial for and convicted of the crime of assault of a public servant. The State did not mention the chains during closing

argument, and the record is silent as to whether the jury saw the chains. We are confident that the belly chains did not affect the jury's deliberations as to the enhancement of Montelongo's punishment or in determining his sentence. We therefore conclude, beyond a reasonable doubt, that Montelongo's wearing of belly chains during the punishment phase of the trial did not contribute to Montelongo's punishment. *See* Tex. R. App. P. 44.2(a); *Bell v. State*, 415 S.W.3d 278, 283 (Tex. Crim. App. 2013).[3] We overrule Montelongo's second issue.

Having overruled all of Montelongo's issues, we affirm the trial court's final judgment.

AFFIRMED.

$\overline{\hspace{4cm}}$
CHARLES KREGER
Justice

Submitted on February 6, 2018
Opinion Delivered July 11, 2018
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.

---

[3] We reviewed issue two under the stricter constitutional error standard; however, we acknowledged that the record likely does not provide a "substantial basis supporting a conclusion that the jury perceived [Montelongo's] restraints." *Bell*, 415 S.W.3d at 283