

# IN THE
# TENTH COURT OF APPEALS

### No. 10-18-00075-CR

**DALE DANIELS,**

                                                                    **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                    **Appellee**


**From the 12th District Court
Walker County, Texas
Trial Court No. 26508**


## MEMORANDUM OPINION


In two issues, appellant, Dale Daniels, challenges his conviction for murder.  *See*
TEX. PENAL CODE ANN. § 19.02 (West 2019).  Specifically, Daniels contends that the trial
court erred when it:  (1) allowed his confession to be heard by the jury; and (2) taped him
to his chair with a spit shield, violating his right to due process and the presumption of
innocence.  Because we overrule both of Daniels's issues on appeal, we affirm.

## I. DANIELS'S CONFESSION

In his first issue, Daniels argues that the trial court abused its discretion by allowing the jury to hear his confession, which was allegedly the product of custodial interrogation without *Miranda* warnings. *See generally Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). We disagree.

### A. Standard of Review

An appellate court reviews a trial court's ruling on the admission of evidence under an abuse-of-discretion standard. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). A trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Id.*; *see Powell v. State*, 63 S.W.3d 435, 439-40 (Tex. Crim. App. 2001). If the trial court's ruling on the admission of evidence is correct under any theory of law, the trial court's decision should not be disturbed, even if the trial court gives the wrong reason for its ruling. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016).

### B. Applicable Law

Under *Miranda*, when a criminal suspect is placed in custody, law enforcement personnel must comply with certain procedural safeguards to protect the suspect's privilege against compulsory self-incrimination. *See* 384 U.S. at 444, 86 S. Ct. at 1612. *Miranda* and its progeny hold that incriminating statements made by the accused, if the authorities have not given the requisite warnings and the accused has not waived these

rights, are not admissible. *See Rhode Island v. Innis*, 446 U.S. 291, 302, 100 S. Ct. 1682, 1690, 64 L. Ed. 2d 297 (1980).

The *Miranda* safeguards apply only when a suspect is placed in custody and interrogated by police. *See id.* at 300, 100 S. Ct. at 1689; *see also Jones v. State*, 795 S.W.2d 171, 174-75 (Tex. Crim. App. 1990). Custodial interrogation for purposes of *Miranda* includes both express questioning and also words or actions that, given the officers' knowledge of any special susceptibilities of the suspect, the officer knows or reasonably should know are likely to "have . . . the force of a question on the accused," and therefore are reasonably likely to elicit an incriminating response. *Pennsylvania v. Muniz*, 496 U.S. 582, 601, 110 S. Ct. 2638, 2650, 110 L. Ed. 528 (1990) (citations omitted); *see Jones v. State*, 795 S.W.2d 171, 174 (Tex. Crim. App. 1990). The latter part of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. *Innis*, 446 U.S. at 301, 100 S. Ct. at 1689-90.

However, not all post-arrest police questioning can be classified as an interrogation. *See Jones*, 795 S.W.2d at 174 n.3. Statements given freely and voluntarily are admissible in evidence. *See Miranda*, 384 U.S. at 478, 86 S. Ct. at 1630. In distinguishing situations which require safeguards to protect the privilege against self-incrimination from those that do not, the *Miranda* court pointed to isolation and intimidation as key aspects of an interrogation that undermines an individual's ability to speak voluntarily. *Id.* at 449-51, 86 S. Ct. at 1615-16; *see Howes v. Fields*, 565 U.S. 499, 508-

09, 132 S. Ct. 1181, 1189, 182 L. Ed. 2d 17 (2012) (noting that custodial interrogation is a "term of art that specifies circumstances that are thought generally to present a serious danger of coercion"). When an accused in custody spontaneously volunteers information that is not in response to earlier interrogation by authorities, the statement is admissible even though not recorded because it is not the product of custodial interrogation. *Stevens v. State*, 671 S.W.2d 517, 520 (Tex. Crim. App. 1984).

Article 38.22 of the Code of Criminal Procedure codifies both *Miranda*'s system of protecting a suspect against self-incrimination and its distinction between voluntary statements and compelled confessions. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, §§ 2, 3, 5 (West 2018). Specifically, article 38.22 prohibits the admission of a written or oral statement made as a result of custodial interrogation by an accused in a criminal proceeding without the warnings required by *Miranda*. *See id.* art. 38.22, §§ 2, 3. However, section five of article 38.22 states that nothing in the article precludes the admission of a statement that is either (1) res gestae of the arrest or offense, (2) a statement that does not stem from custodial interrogation, or (3) a voluntary statement, whether or not the result of custodial interrogation. *See id.* art. 38.22, § 5; *see also Galloway v. State*, 778 S.W.2d 110, 112 (Tex. App.—Houston [14th Dist.] 1989, no pet.). If statements are not made as a result of custodial interrogation, the requirements of *Miranda* and article 38.22 do not apply. *See Waldrop v. State*, 7 S.W.3d 836, 839 (Tex. App.—Austin 1999, no pet.); *see also Gruber v. State*, 812 S.W.2d 368, 371 (Tex. App.—Corpus Christi 1991, pet. ref'd) (holding that a

statement which is volunteered and not the product of custodial interrogation is admissible). Thus, if Daniels's statements were not the result of custodial interrogation, they are admissible. *See Waldrop*, 7 S.W.3d at 839; *see also Gruber*, 812 S.W.2d at 371.

**C.    Discussion**

The trial court held a hearing outside the presence of the jury to determine the admissibility of statements made by Daniels to Steven Miller, the senior warden at the Byrd Unit. The statements were made when Daniels was being transported from the holding cell to the sally port, where the transportation vans and buses drop off and pick up offenders. During this hearing, Miller stated that he did not intend to speak with or interrogate Daniels while transporting Daniels from the holding cell. However, without prompting, Daniels asked whether the State was going to kill him. Miller responded by asking why would the State want to kill Daniels, especially considering Daniels had been "hollering all morning that [he had not] even done anything." Daniel volunteered that he "killed that gay mother fucker [his cell mate, Aaron Spurling]." Miller told Daniels that he "could look at a capital offense, which could be subject to the death penalty," because Daniels was doing a life sentence for aggravated kidnapping and he admitted to killing Spurling. Daniels then explained that he used his hands, rather than a weapon, when he killed Spurling. At this point, Miller and Daniels were "almost to the van," so Miller advised Daniels that "it's probably best that he stop talking to me." Miller denied soliciting the conversation with Daniels.

At the end of the hearing, the trial court concluded that the statements made by Daniels to Miller were made freely and voluntarily and, thus, were admissible. In support of its decision, the trial court stated that Daniels,

> was obviously in custody, but in custody of the Texas Department of Criminal Justice. He was not in custody as part of an investigation or an arrest for purposes of an investigation of this particular incident; that he was not under interrogation, was not being interrogated, and it was not a custodial interrogation.

Based on our review of the record, we cannot say that the trial court abused its discretion by admitting Miller's testimony regarding the statements Daniels made while being transported from the holding cell. *See Rhomer*, 569 S.W.3d at 669; *see also Powell*, 63 S.W.3d at 439-40. The record demonstrates that, when he was being transported from the holding cell to the van, Daniels was not subject to a custodial interrogation, as the necessary isolation and intimidation elements were missing. *See Howes*, 565 U.S. at 508-09, 132 S. Ct. at 1189; *Miranda*, 384 U.S. at 478, 86 S. Ct. at 1630; *see also Jones*, 795 S.W.2d at 174 n.3. Indeed, Daniels spontaneously volunteered incriminating statements that were not coerced and were not in response to earlier interrogation by law enforcement. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 5; *see also Stevens*, 671 S.W.2d at 520; *Galloway*, 778 S.W.2d at 112. Therefore, because Daniels's statements were volunteered and not the product of a custodial interrogation, *Miranda* and article 38.22 do not apply, and the statements are admissible. *See Waldrop*, 7 S.W.3d at 839; *see also Gruber*, 812 S.W.2d at 371.

And even if the trial court erred in admitting the complained-of statements made by Daniels to Miller, we note that Daniels testified to the same information at trial without objection. Any error in admitting evidence is cured when the same evidence is admitted elsewhere without objection. *See Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004); *see also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). Thus, because the complained-of statements were admitted through Daniels's testimony without objection, any error in admitting the evidence was cured. *See Lane*, 151 S.W.3d at 193; *see also Leday*, 983 S.W.2d at 718. Accordingly, we overrule Daniels's first issue.

## II. RESTRAINING DANIELS DURING THE PUNISHMENT PHASE OF TRIAL

In his second issue, Daniels asserts that the trial court violated his right to due process and the presumption of innocence when it ordered that he be handcuffed, shackled, and taped to a chair with a spit guard placed over his head with a blanket to hide his arms during the punishment phase of trial.

### A. Standard of Review

We review a trial court's decision to shackle a defendant in two stages. *See Long v. State*, 823 S.W.2d 259, 282-83 (Tex. Crim. App. 1991) (citing *Clark v. State*, 717 S.W.2d 910, 919 (Tex. Crim. App. 1986)). First, we determine whether the trial court abused its discretion by ordering the defendant shackled. *Id.* at 282. Next, if we conclude that the trial court abused its discretion, we determine whether the defendant suffered reversible harm. *Id.* at 283. Because the use of shackles implicates constitutional rights, in

conducting a harm analysis, we must "reverse a judgment of conviction or punishment unless [we] determine[] beyond a reasonable doubt that the [shackling] did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a); *see Wynn v. State*, 219 S.W.3d 54, 60 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

## B.      Applicable Law

The United States Supreme Court has held that shackling a defendant is "inherently prejudicial." *Holbrook v. Flynn*, 475 U.S. 560, 568, 106 S. Ct. 1340, 1345, 89 L. Ed. 525 (1986). And although the presumption of innocence generally does not apply at the punishment phase, the trial court must still maintain the defendant's due-process right to a meaningful defense and conduct dignified proceedings. *Deck v. Missouri*, 544 U.S. 622, 632, 125 S. Ct. 2007, 2014, 161 L. Ed. 953 (2005). Therefore, courts may not routinely require defendants to appear in shackles before a jury during either the guilt or punishment phase of trial; however, exceptional circumstances may demand that a trial court shackle a defendant. *See id.* at 628-29, 125 S. Ct. at 2011-12; *see also Long*, 823 S.W.2d 283. "Examples of exceptional circumstances warranting shackling include situations in which the accused has a history of escape, expressed an intent to escape, threatened physical violence, assaulted persons in the courtroom, and repeatedly interrupted court proceedings." *Keith v. State*, 294 S.W.3d 352, 355 (Tex. App.—Eastland 2009, no pet.). Under such exceptional circumstances, it is within the discretion of the trial court to require the defendant to be tried in restraints. *See Bell v. State*, 415 S.W.3d 278, 281 (Tex.

Crim. App. 2013). But the record must manifest the trial court's reasons for placing the defendant in restraints. *Id.*; *see Deck*, 544 U.S. at 633, 125 S. Ct. at 2014-15; *Long*, 823 S.W.2d at 282.

## C.    Discussion

During the guilt-innocence phase of trial, Daniels took the stand to testify in his own behalf. In his testimony, Daniels admitted to killing Spurling to prevent Spurling from sexually assaulting him. During cross-examination by the State, Daniels became combative. At one point, he left the witness seat until his attorney stopped him. Daniels also decided to quit answering the State's questions, though his attorney told him he had to answer. Eventually, the trial court admonished Daniels to answer the State's questions.

Thereafter, Daniels informed the prosecutor that he would not answer any further questions, which prompted another admonishment from the trial court. Despite this admonishment, Daniels refused to answer the prosecutor's questions, stating that he did not want to talk to the prosecutor. Another admonishment from the trial court followed.

Next, Daniels answered all of the prosecutor's questions with, "I don't know" and "I don't remember nothing." Daniels refused to look at exhibits, and his responses devolved into "Oh man, get out of my face. I don't want to talk to you," followed shortly by "I'm not talking shit." At this point, Daniels began repeatedly showing his middle finger to the prosecutor, answering every question with, "Whatever," and offering responses, such as "Fuck you" and "Fuck you, pussy." Daniels's attorney asked for a

break to calm Daniels down. The trial court granted the request and removed the jury. After the break, Daniels remained calm. Ultimately, the jury unanimously found Daniels guilty of murder, and the court reconvened for the punishment phase of trial four days later.

At the beginning of the punishment hearing and outside the presence of the jury, the State asked that Daniels be fingerprinted. When the trial court ordered Daniels to submit to the fingerprinting, Daniels refused. As the correctional officers fingerprinted Daniels, a physical altercation ensued. Daniels complained that a correctional officer broke his finger, and a correctional officer complained that Daniels had spit on him. The trial court noted that it was taking five officers to restrain Daniels and ordered Daniels shackled. During this whole ordeal, Daniels was cursing and ordering officers to take their hands off of him. After being shackled, Daniels proclaimed, "All of you are going to have a—that's the only way you're going to handle me, mother fucker. Yeah. It's the only way you're going to handle me." In response, the trial judge noted the following:

> All right. Mr. Daniels. I do not want you to be in shackles and be . . . your mouth taped shut . . . in front of the jury, but you don't leave me any choice, sir. You have caused a disturbance. It[']s obvious that you're going to cause a disturbance in the courtroom in its proceedings and make it difficult for these proceedings to continue unless you are shackled and unless . . . you are also taped.

During the trial judge's admonishment, Daniels interrupted repeatedly. Nevertheless, the trial judge offered to immediately remove all restraints if Daniels would cooperate. He refused.

The trial judge then stated:

Because of the conduct, because of your spitting on individuals, you're going to be required during this proceeding to have that [a spit guard] placed on your head. It's not going to be removed. You're not going to be allowed to remove it. All right.

In addition to that, sir, your arms are going to be taped to that chair so that you cannot reach that mask and remove it from your face. And you'll not be able to remove yourself from that chair. . . .

If you cooperate, it would not be necessary for us to do that, but apparently you are not going to cooperate.

Before bringing the jury back in the courtroom, the trial judge described the scene as follows: "Go ahead and let the record reflect that we are putting like bags over the defendant's arms and his hand in order to be able to mask some of the effects of the shackles and the duct tape." Daniels's appointed counsel also took pictures of the shackling, and the trial court admitted them into evidence. As indicated in the pictures, when the jury was brought back into the courtroom, Daniels had a blanket draped over him to hide the effects of the shackles and duct tape, though the spit guard was visible to the jury.

It is important to note that the restraints complained of by Daniels were placed on him after the jury returned a guilty verdict, but before the punishment phase of trial began. Furthermore, it was Daniels's disruptive and potentially dangerous behavior that made the restraints necessary during the punishment phase of trial. In that vein, the trial court assessed the need for restraints for Daniels. The trial court did not merely express

generalized safety concerns. *Cf. Bell*, 415 S.W.3d at 283 (holding that the trial court erred where no particularized finding articulating the reason for shackling the defendant was made, only "a generalized concern for courtroom safety" and no justifiable reasons were clear from the record). Rather, the trial court specifically referenced Daniels's vulgar outbursts, failure to cooperate, spitting on officers, and the fact that it took five officers to restrain Daniels so that his fingerprints could be taken. Moreover, the record demonstrates that Daniels refused to follow the trial court's repeated verbal instructions and admonishments from the time the State closed its case-in-chief and into the punishment phase of trial. Additionally, on two occasions, the court offered to remove the restraints if Daniels cooperated, but Daniels refused. Daniels threatened that his shackling was the "only way you're going to handle [him]."

We, therefore, conclude that the record establishes that Daniels was disruptive and physically and verbally abusive towards others, including the trial judge and correctional officers. Given the evidence outlined above, we cannot say that the trial judge abused his discretion by ordering that Daniels be shackled with a spit guard placed over his head. *See Deck*, 544 U.S. at 628-29, 125 S. Ct. at 2011-12; *Bell*, 415 S.W.3d at 281; *Long*, 823 S.W.2d at 282-83; *see also Keith*, 294 S.W.3d at 355; *Molina v. State*, 971 S.W.2d 676, 681-82 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (holding that the trial judge did not abuse his discretion by shackling the defendant during voir dire because of his outbursts). And because we have concluded that the trial court did not abuse its discretion, we need not

address the second step, which involves a constitutional harm analysis under Rule 44.2(a). Accordingly, we overrule Daniels's second issue.

## III.    CONCLUSION

Having overruled both of appellant's issues on appeal, we affirm the judgment of the trial court.


JOHN E. NEILL
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Neill
Affirmed
Opinion delivered and filed September 25, 2019
Do not publish
[CRPM]

